IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

FILED
IN OPEN COURT

SEP - 3 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MONIKA MAGDALENA JAWORSKA,<br><br>Defendant. | Case No. 1:20-cr-180 |

STATEMENT OF FACTS

The United States and the defendant, MONIKA MAGDALENA JAWORSKA (hereinafter referred to as the "the defendant"), agree that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. The defendant and her husband, and coconspirator, TARIK JAAFAR, resided in Ashburn, Virginia, within the Eastern District of Virginia.

2. From on or about April 7, 2020, to on or about June 20, 2020, in the Eastern District of Virginia and elsewhere, the defendant did knowingly and willfully conspire and agree with TARIK JAAFAR to commit bank fraud, contrary to Title 18, United Sates Code, Section 1344, and to defraud the United States Small Business Administration, all in violation of Title 18, United Sates Code, Section 371.

3. The object of the conspiracy was for the defendant and JAAFAR to unlawfully obtain money from:

   a. financial institutions by submitting materially false applications for loans financed by the federal Paycheck Protection Program, and

b. from the United States Small Business Administration by submitting materially false applications for loans financed by the federal Economic Injury Disaster Loan program.

*The Paycheck Protection Program*

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. This information is used to determine whether the applicant is eligible for a PPP loan and, if so, to calculate the amount of money the small business is eligible to receive. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

6. A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business

2

Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

7. PPP loan proceeds must be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses a certain percentage of the PPP loan proceeds on payroll expenses.

*The Economic Injury Disaster Loan Program*

8. The Economic Injury Disaster Loan ("EIDL") program is a SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

9. The CARES Act also authorizes the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance is determined by the number of employees the applicant certifies having. The advances do not have to be repaid. An advance can be made before a loan is accepted or declined.

10. In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-

month period was that preceding January 31, 2020. The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

11. EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

### *The Defendant's and Tarik Jaafar's Businesses*

12. The defendant and JAAFAR registered the following four business entities in Virginia: Blue Pearl, LLC; Global Capital Financing, LLC; Washington Capital Group, LLC; and Visla Capital, LLC (collectively referred to as "the co-conspirators' four businesses").

  a. Blue Pearl, LLC, was formed on July 29, 2011, by JAAFAR. The entity's registration lapsed in June 2017. The business was reinstated on April 27, 2020.

  b. Global Capital Financing, LLC, was formed on March 24, 2010, by JAAFAR. On more than one occasion, the entity's registration lapsed and was reinstated. It was most recently reinstated on February 26, 2020, and on April 26, 2020, the registered agent was changed from JAWORSKA to JAAFAR.

  c. Washington Capital Group, LLC, was formed on October 27, 2013, by JAAFAR. Throughout the history of the registration of the entity, the registered

agent oscillated between JAAFAR and JAWORSKA. Most recently, the registered agent was changed to JAAFAR on September 17, 2018.

    d. Visla Capital, LLC, was formed in Virginia on November 20, 2012, by JAWORSKA. On more than one occasion, the entity's registration lapsed and was reinstated. It was most recently reinstated on April 27, 2020.

## *The PPP Loan Applications*

13. In furtherance of the object of the conspiracy, from April 13, 2020, to May 6, 2020, the defendant and JAAFAR submitted eighteen fraudulent PPP loan applications in the names of the co-conspirators' four businesses to twelve financial institutions, as defined by Title 18, United States Code, Section 20, and located in the Eastern District of Virginia and elsewhere.

14. The PPP loan applications contained the following materially false representations:

    a. The loan applications stated the co-conspirators' four businesses employed individuals when in fact the businesses had no employees.

    b. The loan applications listed average monthly payroll amounts when in fact there was no payroll because there were no employees.

    c. The loan applications falsely listed business addresses.

    d. The defendant and JAAFAR falsely certified on the loan applications that the businesses were in operation on February 15, 2020, and had employees for whom they paid salaries and payroll taxes or paid independent contractors, knowing that in fact the businesses conducted virtually no commerce and paid no salaries and no payroll taxes.

    e. The defendant and JAAFAR falsely certified on the loan applications that the funds would be used to retain workers and maintain payroll or make mortgage interest

payments, lease payments, and utility payments, as specified under the Paycheck Protection Program rules, knowing that the funds were not going to be used as required.

f. The loan applications included certification that the application and information provided in all supporting documents were true and accurate. The defendant and JAAFAR submitted Forms 941, known as "Employer's Quarterly Federal Tax Return", and payroll records as supporting documents to the loan applications. These documents were false in that the defendant and JAAFAR claimed taxes were filed with the IRS and salaries were paid to employees knowing that in fact no taxes were filed and there was no payroll.

15. In furtherance of the object of the conspiracy, the defendant submitted fourteen of the PPP loan applications in her name, which she signed, and JAAFAR submitted four of the PPP loan applications in his name, which he signed. The eighteen PPP loans sought totaled $6,640,200. Of the loans sought, four PPP loans, from three lenders, were disbursed totaling $1,438,500. Despite some of the funds being frozen, cash was withdrawn from the loan proceeds and the defendant and JAAFAR transferred some of the loan proceeds to other financial institutions. Eventually, all the PPP loan proceeds were able to be frozen by the financial institutions, with the exception of $30,000.00 withdrawn in cash by JAAFAR. The outstanding $30,000.00 was subsequently recovered by the Government upon the defendant's arrest.

### *The EIDL Loan Applications*

16. In furtherance of the object of the conspiracy, from April 7, 2020, to April 15, 2020, the defendant submitted two EIDL loan applications, one in the name of Visla Capital, LLC, and one in the name of Washington Capital Group, LLC, containing materially false statements to the

SBA. These loans sought funds that neither the defendant, JAAFAR, nor the two business entities listed on the applications were entitled to receive. The false material statements included:

   a. The loan applications falsely listed business addresses.

   b. The loan applications listed the number of individuals employed by the businesses when in fact there were no employees.

   c. The loan applications falsely listed gross revenue for the 12 months prior to the COVID-19 pandemic when in fact the businesses produced no revenue during that time.

17. In furtherance of the object of the conspiracy, in the Eastern District of Virginia and elsewhere, the following acts, among others, were committed:

### *PPP Loans*

   a. On or about April 13, 2020, the defendant applied for a PPP loan, totaling $334,600, from Harvest Small Business Finance, LLC, ("Harvest") in the name of Washington Capital Group, LLC, which contained materially false statements.

   b. One or about April 14, 2020, the defendant caused Harvest to send via ACH the PPP loan proceeds to a Capital One Bank account ending in x3990 ("Capital One Account 3990") held in the name of Washington Capital Group, LLC. JAAFAR had sole signatory authority over the Capital One Account 3990.

   c. On or about May 15, 2020, the defendant opened an United Bank account ending in x4777 ("United Bank Account 4777") held in the name of Visla Capital, LLC, with a $100 deposit. She had sole signatory on the account.

   d. On or about May 18, 2020, JAAFAR wired $88,322 from the Capital One Account 3990 to United Bank Account 4777.

7

e. On or about April 22, 2020, the defendant applied for a PPP loan, totaling $253,700, from IncredibleBank in the name of Visla Capital, LLC, which contained materially false statements. The funds were deposited in an IncredibleBank account ending in x6664 ("Incredible Account 6664").

f. On or about May 6, 2020, the defendant and JAAFAR wired $82,781 from the Incredible Account 6664 to a Capital One account ending in x3987 ("Capital One Account 3987") held in the name of Visla Capital, LLC.

g. On or about May 7, 2020, the defendant and JAAFAR wired $88,862 from the IncredibleBank Account 6664 to the Capital One Account 3987.

h. On or about May 8, 2020, the defendant and JAAFAR wired $81,132 from the IncredibleBank Account 6664 to the Capital One Account 3987.

i. On or about May 12, 2020, JAAFAR withdrew $5,000 in cash from the Capital One Account 3987.

j. On or about May 16, 2020, JAAFAR withdrew $25,000 in cash from the Capital One Account 3987.

k. On or about May 18, 2020, JAAFAR transferred $93,814 from the Capital One Account 3987 to United Bank Account 3777.

l. On or about April 23, 2020, JAAFAR applied for a PPP loan from Sonabank totaling $405,200, in the name of Global Capital Financing, LLC, which contained materially false statements. The funds were disbursed via cashier's check.

m. On or about May 8, 2020, JAAFAR deposited the cashier's check from Sonabank into a M&T bank account ending in x3777 ("M&T Account 3777") held in the

name of Global Capital Financing, LLC. JAAFAR had sole signatory authority over the M&T Account 3777.

n. On or about May 5, 2020, the defendant applied for a loan from Sonabank totaling $445,000, in the name of Blue Pearl, LLC, which contained materially false statements. The funds were disbursed via cashier's check.

o. On or about May 5, 2020, JAAFAR opened a Capital One account ending in x7189 ("Capital One Account 7189") in the name of Blue Pearl, LLC. JAAFAR opened Capital One Account 7189 with $250 and had sole signatory authority over Capital One Account 7189.

p. On or about May 8, 2020, JAAFAR deposited the cashier's check for $445,000 from Sonabank into the Capital One Account 7189.

### *EIDL Loans*

q. On or about April 7, 2020, the defendant and JAAFAR applied for an EIDL loan from the SBA in the name of Washington Capital Group, LLC, which contained materially false statements.

r. The defendant and JAAFAR directed that the $10,000 EIDL advance be deposited into the Capital One Account 3990. As a result, on or about May 5, 2020, the EIDL advance was deposited in the Capital One Account 3990.

### *Conclusion*

18. From in or about April 2020 to on or about June 20, 2020, in the Eastern District of Virginia and elsewhere, the defendant, MONIKA MAGDALENA JAWORSKA, and her husband and co-conspirator TARIK JAAFAR did knowingly and willfully conspire with each other to commit bank fraud, contrary to Title 18, United States Code, Section 1344; that is, the defendant

knowingly and intentionally conspired with JAAFAR to execute a scheme and artifice to defraud multiple financial institution which included, Harvest Small Business Finance, LLC, IncredibleBank, and Sonabank, financial institutions under the meaning of Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property, under the custody and control of those financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and JAWORSKA did knowingly and willfully conspire with JAAFAR to defraud the United States Small Business Administration and to impair, obstruct, and defeat the lawful administration the EIDL program and in the distribution of EIDL loans by deceitful or dishonest means, all in violation of Title 18, United States Code, Section 371.

19. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

20. The actions of the defendant, as recounted above, were in all respects knowing, willful and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: 9/20/20

By: _____
Kimberly Shartar
William Fitzpatrick
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MONIKA MAGDALENA JAWORSKA, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
MONIKA MAGDALENA JAWORSKA

I am defendant's attorney.  I have carefully reviewed the above Statement of Facts with him.  To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Jonathan Simms, Esq.
Attorney for MONIKA MAGDALENA JAWORSKA