IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:20-cr-180 |
| | ) | |
| v. | ) | Sentencing Date: November 20, 2020 |
| | ) | |
| MONIKA MAGDALENA JAWORSKA, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney; Kimberly Shartar and William Fitzpatrick, Assistant United States Attorneys, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines" or "U.S.S.G."), files this Position of the United States with Respect to Sentencing of Defendant Monika Magdalena Jaworska.

The United States submits that the Probation Officer correctly calculated the Sentencing Guidelines level to be 17, which results in a 24 to 30 months advisory Guidelines range. Based on the factors set forth in 18 U.S.C. § 3553(a), the United States requests that this Court impose a sentence of time served, two years of supervised release, order restitution in the amount of $220,573, and order forfeiture of certain bank accounts and a portion of the cash seized at the defendant's arrest as detailed in the agreed upon forfeiture order.

I. **BACKGROUND**[1]

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA"). PPP loans are obtained by submitting an application to a financial institution along with supporting documentation as to the business's payroll expenses. PPP loan proceeds must be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time. The CARES Act also authorizes the SBA to provide Economic Injury Disaster Loans ("EIDL") to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. Pursuant to the CARES Act, the SBA is authorized to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. Unlike PPP loan applications, EIDL applications are submitted directly to the SBA. EIDL funds can be used for payroll expenses,

---

[1]The PSR and the Statement of Facts ("SoF") signed by the defendant, Dkt. 41, adequately set forth the offense conduct in this case.

sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

Between April 13, 2020, and May 6, 2020, the defendant, Monika Magdalena Jaworska, (hereinafter "the defendant" or "Jaworska") and her husband and co-conspirator, Tarik Jaafar ("Jaafar")[2], submitted eighteen PPP loan applications for four businesses, which were merely shell companies, to twelve financial institutions. Of the approximately $6.6 million sought, the financial institutions disbursed approximately $1.4 million. Additionally, between April 7, 2020, and April 15, 2020, the defendant and Jaafar submitted two EIDL loan applications for two of the shell entities to the SBA. As a result, one $10,000 EIDL advance was obtained from the SBA.[3]

On May 19, 2020, law enforcement visited the home addresses of record, located in northern Virginia, for the defendant and Jaafar. At one of the addresses, the law enforcement officer could tell people were present; however, no one answered the door when he knocked. Nonetheless, he left his card at the location. As a result of this visit, the United States made contact with Jaafar's first defense attorney. Counsel for the United States informed Jaafar's counsel that both Jaworska and Jaafar were targets of the investigation. Knowing he and his wife were both under investigation, and despite making plans to meet with the government in-person for a second planned meeting, Jaafar purchased one-way tickets for himself, Jaworska, and their two children, to fly from New York to Poland on Saturday, June 20, 2020.

---

[2] Jaafar was sentenced on November 13, 2020. Case number 1:20-cr-185. Documents related to his case will be referred to as "Jaafar Dkt."

[3] However, as set forth below, Jaafar was only able to withdraw approximately $30,000 of the amounts disbursed.

The defendant was arrested on or about Saturday, June 20, 2020, on a criminal complaint charging her with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Specifically, the defendant and Jaafar were arrested in the parking garage across from Terminal 7 of John F. Kennedy International ("JFK") airport, where Polish Airlines is located, with 18 bags. The defendant had her United States and Polish passports on her person. In the various bags, law enforcement found $49,875.65 in cash, approximately 14 cell phones, and multiple laptops. On September 3, 2020, the defendant pleaded guilty to one count of conspiracy to defraud the United States and to defraud various financial institutions in violation of 18 U.S.C. § 371. Dkt. 40. Defendant was in custody for the time period between her arrest in New York, on June 20, 2020, and when she entered her plea, on September 3, 2020. Dkt. 8, 42. As such, she has served approximately 75 days in jail.

## II. THE APPROPRIATE GUIDELINE RANGE

As this Court is aware, following the Supreme Court's decision in *United States v. Booker*, the Sentencing Guidelines are now advisory. 543 U.S. 220, 264 (2005). "In the wake of *Booker* . . . the discretion of sentencing court is no longer bound by the range prescribed by the guidelines. Nevertheless, a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'" *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker,* 543 U.S. at 264). In fact, the Fourth Circuit has noted that "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir. 2005). Thus, "sentencing courts are not left with unguided and unbounded sentencing discretion." *United States v. Green,* 436 F.3d 449, 455 (4th Cir. 2006).

4

Here, the United States agrees that the appropriate Guidelines range with respect to incarceration is 24 to 30 months. The total offense level of 17 results from a base offense level of 6, increased by 14 levels for the corresponding to loss of over $550,000 but less than $1,500,000,[4] and a 3 level reduction for the defendant's acceptance of responsibility and timely notification to the United States of her intention to plead guilty.[5] The United States asks this Court to adopt the PSR's findings and advisory Guidelines range.

### III. THE FACTORS SET FORTH IN SECTION 3553(A) AND RECOMMENDED SENTENCE

After calculating the appropriate guidelines range, "the court must 'determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (quoting *Green*, 436 F.3d at 455). Those factors include the nature of the offenses, the characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, afford deterrence, protect the public, provide the defendant with needed educational or other training, and the need for unwarranted sentencing disparities among

---

[4] While the defendant sought approximately $6.4 million in loans, the PPP loan program allows for individuals and businesses to seek multiple PPP loans from various lenders at the same time. However, once a loan is funded, the other applications must be withdrawn. The investigating agents found that the defendant did not seek additional PPP loans for an entity once the entity had already received a PPP loan. As such, the government agreed to limit the loss to the $1.4 disbursed by the lenders.

[5] As noted here, the PSR includes a three-level decrease for acceptance of responsibility. In this respect, the United States agrees that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of her intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a). The Court need not weigh the factors equally, but must consider each of them. *United States v. Fowler,* 948 F.3d 663, 674 (4th Cir. 2020).

The defendant and her husband took advantage of two special programs meant for American businesses struggling amidst unprecedented economic disruption due to the COVID-19 pandemic. Despite not having operating businesses, they applied for PPP and EIDL funds. These were not one off mistakes, instead the defendant, along with her husband, applied for <u>eighteen</u> PPP loans from twelve financial institutions and filed two EIDL applications with the SBA. The PPP loan applications included fake employment tax returns and payroll documents which claimed the business had a number of employees. These acts exploited the fact that the PPP program was designed to release funds as quickly as possible in order to provide a life-line to businesses across the country.

Because of early detection of their crimes by law enforcement, the defendant and her husband did not enjoy the use of the fraudulently obtained funds. Within a mere four to five weeks of obtaining the funds, law enforcement knocked on their door. The banks later froze the fraudulently obtained funds. The defendant's husband was only able to withdraw approximately $30,000 in cash from the fraud proceeds and some of the funds went to various banking fees. Dkt. 41 at ¶ 15. Notwithstanding law enforcements quick actions, the funds likely would have disappeared. And if not for law enforcement learning of their potential flight, the defendant and her husband would be oversees never likely to face the consequences of their crime.

The defendant clearly participated in the fraud. Her name was listed on many of the PPP loan applications, Dkt. 2 at ¶14, she opened at least one of the bank accounts in which fraud proceeds were transferred to, Dkt. 41 at ¶17c, and she was involved in multiple phone calls with lenders and exchanged emails with lenders. Dkt. 2 at ¶¶13, 32. However, her husband and co-conspirator, Jaafar, appears to be the more sophisticated individual. Jaafar has a PhD in Economics and worked for at least fifteen years for some of the most premier banks in this country, including: Citibank, Sun Trust, and Lehman Brothers. Jaafar Dkt. 58. ¶¶82, 86-91. Additionally, according to Secretary of State records, Jaafar is listed as the individual who formed three of the four shell entities. Dkt. 41, ¶12. In contrast, Ms. Jaworska appears to be the less culpable of the two. First, she lacks the banking background of her husband. Further, it was Jaafar who withdrew $30,000 in cash from the bank, *Id.* at ¶15, and who purchased the plane tickets to Poland. Dkt. 46 at ¶41. This court sentenced Jaafar, who pleaded guilty to the same charge with the same overall loss amount, to a term of 12 months and two years of supervised released. In order to avoid unwarranted disparities among similarly situated defendants, Jaworska should be sentenced to more than 12 months of incarceration. However, given that Jaworska seems to be less culpable than her husband, along with the fact that she appears to be the sole caretaker of the couple's two children, the government recommends a sentence of time served and two years of supervised release. This sentence aims to avoid the children being placed in foster-care or with other family members.

**IV. FORFEITURE AND RESTITUTION**

While some of the funds were returned by the banks to the lenders, the lenders still have not been made whole. As result there are fraud proceeds in bank accounts controlled by

the defendant and her husband that must be forfeited and there is also outstanding restitution due to the lenders and the SBA.

Pursuant to the plea agreement, Dkt. 40 at ¶10, the defendant and the government have agreed to the attached consent forfeiture order which includes forfeiture totaling $220,573. Ex. 1. Further, pursuant to the plea agreement, Defendant has agreed to pay mandatory restitution pursuant to 18 U.S.C. §3663A(c)(1)-(c)(2). Dkt. 40 at ¶7 and 9. Attached is the government's proposed restitution order for restitution totaling $220,573. Ex. 2.

## CONCLUSION

For the reasons stated, the United States respectfully requests this court to sentence Monika Jaworska to a period of incarceration of time served and 2 years of supervised release. Such a sentence is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a). Finally, the government requests that the court enter the agreed upon consent forfeiture order and the Government's proposed order restitution.

G. Zachary Terwilliger
United States Attorney

/s/
Kimberly Shartar
William Fitzpatrick
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to all counsel of record:

By: _____/s/_____
Kimberly Shartar
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: 703-299-3700
Email: kimberly.m.shartar@usdoj.gov