IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.          ) | Case No.  1:20CR180-001 |
| ) | |
| MONIKA JAWORSKA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, Monika Jaworska, through counsel, states that she has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case.

On June 20, 2020, Mrs. Jaworska was arrested in New York, and denied release. On September 3, 2020, Mrs. Jaworska pled guilty to a violation federal law. Pursuant to a plea agreement, she pled guilty to one count of Conspiracy to Defraud the United States. She was released from detention that evening.

According to the submitted PSR, Mrs. Jaworska's total offense level is seventeen (17), her criminal history category is I, and sentencing guideline range is between 24 - 30 months of incarceration.

For the reasons set forth below, Mrs. Jaworska is in agreement with the Government's position that a sentence of time served and two (2) years of supervised release is sufficient to meet the aims of sentencing.

**APPLICATION OF U.S.C. §3553(a) FACTORS**

In United States v. Booker the Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S.Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 455 (2000) applied to the Federal Sentencing Guidelines. United States v. Booker, 125 S.Ct. 738, 756 (2005). The Court further held that the provisions of the Federal Sentencing Reform Act of 1984

that make the Guidelines mandatory or which rely upon the Guidelines' mandatory nature, were incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. As a result, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." 125 S.Ct. at 757.

Largely as a result of the Supreme Court's more recent sentencing pronouncements in Gall v. United States, 128 S.Ct. 586 (2007) and Kimbrough v. United States, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have "significantly broadened." United States v. Moon, 513 F.3d 527, 544 (6th Cir. 2008), quoting Gall, 128 S.Ct. at 602. District courts are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines, nor are courts required to even presume the guidelines provide an appropriate sentence in a given case.

Recognizing that the guidelines are simply the "starting point" in a sentencing analysis, district courts must delve deeper, and make an "individualized assessment based on the facts presented." Gall, 128 S.Ct. at 597. In making an individualized assessment, the district court is required to consider all of the factors outlined in 18 U.S.C.A. §3553(a), and is permitted to tailor the sentence in light of other statutory concerns. Kimbrough, 128 S.Ct. at 570. A district court may reasonably determine that a within guidelines sentence does not serve the objectives of sentencing, even if that determination ultimately rests on a disagreement with the guidelines. Kimbrough, 128 S.Ct. at 564. See United States v. Pugh, 515 F.3d 1179, 1190-91 (11th Cir. 2008).

In the final analysis, the goal of performing an individualized sentencing assessment is to arrive at a just sentence, one "sufficient, but not greater than necessary," 18 U.S.C.A. §3553(a), to serve the purposes of sentencing set forth in §3553(a)(2). United States v. McBride, 511 F.3d 1293, 1297 (11th Cir. 2007). The sentencing court is "free to conclude that the applicable guideline range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy." United States v. Campos-Maldanado, 531 F.3d. 337 (5th Cir. 2008).

A district court must give respectful consideration of the guidelines in determining a sufficient sentence, Gall, 128 S.Ct. at 594, but it may not presume that the guideline sentence is the correct one. Rita v. United States, 127 U.S. 2456, 2465 (2007). The court is free to consider whether the guideline sentence itself "fails to properly reflect §3553(a) considerations" in the

case at hand, Rita, 127 S.Ct. at 2465, and/or whether the guidelines at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role." Kimbrough, 128 S.Ct. at 575.

The offenses for which Mrs. Jaworska stands convicted do not mandate a minimum sentence of imprisonment. Congress not only envisioned, but accepted, the possibility that some defendants in Mrs. Jaworska's position would receive no jail time at all. In short, this is not a mandatory minimum. As the guidelines are now advisory, this court is not constrained from imposing an individualized sentence that does not exceed the statutory ceiling.

In Kimbrough v. United States, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, See Rita v. United States, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a). The Government and Defendant agree that a sentence of time served and two (2) years is appropriate following a consideration of the 3553(a) factors.

### A. The Nature and Circumstances of the Offense

Mrs. Jaworksa participated in a conspiracy with her husband and co-defendant Tarik Jaafar. The couple did not gain any financial benefit from their activity. Every single dollar has been recovered and is currently in possession of the Government. The funds will be promptly returned to the victims following sentencing. This is not a case where the defendant(s) went on lavish shopping sprees with fraudulent funds.

The criminal activity was conceived in the brain of Mrs. Jaworska's husband, Jaafar. Jaafar, throughout the years, established and registered several different businesses. One of the businesses was established as early as 2010. Some of the businesses were in Jaafar's name and others he decided to put in his wife's name. Mr. Jaafar let the majority of registrations lapse over the passage of time.

In March 2020, the United States was in the midst of controlling a pandemic and also saving businesses that were affected by the disease and "lockdown" restrictions. The Payroll Protection Program was established as a life line to provide relief to affected businesses. Mrs. Jaworksa's husband has vast experience in the banking industry. Prior to, and continuing through the onset of the pandemic, the family was suffering from severe financial hardships. Mr. Jaafar made a fateful decision and devised a scheme in which he would falsify PPP applications in order to secure funds for his family. Mr. Jaafar, using his banking experience, initiated loan applications and prepared them to be submitted. This included the submission of false tax and payroll records. Mr. Jaafar required Mrs. Jaworska's assistance in finalizing several of the applications, because she was registered as the owner. Although registered as an owner, Mrs. Jaworska had no business dealings with any of the businesses established by Mr. Jaafar. The businesses were established years ago, and existed in name only. Mrs. Jaworska's name was required on several of the loan applications and she was also the point of contact on those same applications.

Mrs. Jaworska accepts responsibility for the role she played in assisting her husband execute this fraud. She signed several loan applications, allowed her identification to be used, and communicated with bankers. Mrs. Jaworska does not having a banking background, and has never worked in the banking industry. Despite this, she knew her actions were not honest and she has accepted responsibility for her role in assisting the completion of fraudulent applications in order to secure money. Although Mr. Jaafar was heading the conspiracy, Mrs. Jaworska knows that it could not have been completed without her signatures on the documents. In total, the couple was approved for $1,448,500 via fraudulent documentation. This includes two EIDL loans that were approved. In the end, the couple did not spend nor profit a single penny from their actions.

The PSR makes several mentions of the fact that Mrs. Jaworska and Mr. Jaafar were arrested at JFK airport in New York. The couple was set to travel to Poland with their children.

Prior to their arrest, Mr. Jaafar was informed that he was the target of an investigation and he retained legal counsel. Mrs. Jaworska had limited information of the extent of her husband's investigation, and he provided verbal reassurance that legal issues were simply being discussed. Prior to a scheduled meeting with the Government, Mr. Jaafar purchased plane tickets for the entire family, and told them that they should go to Poland to visit Mrs. Jaworska's ill father. Her father is suffering from severe health issues and may require surgery to repair damage to his heart. An Embassy clearance was required and obtained, and the trip was scheduled. Mrs. Jaworksa, not fully aware of what stage Mr. Jaafar's legal issues were in, was simply relieved that she would have the opportunity to visit her father. Although, she had a brief exchange with Mr. Jaafar's attorney about possible criminal liability, she had not been served a target letter. When she traveled to New York, there were not warrants for either her or Mr. Jaafar.

## B. **The History and Characteristics of the Defendant**

Mrs. Jaworska is 43 years old. She was born in Poland and raised in Poland. She lived with both of her parents and was the only child of the couple. Her up brining was good and she maintains a close and loving relationship with her Mother and Father, whom still reside in Poland. Mrs. Jaworska subsequently immigrated to the United States. She is a naturalized U.S. Citizen.

Mrs. Jaworska's parents who still reside in Poland wrote a joint letter on behalf of their daughter. The letter is attached to this filing in its original form, and counsel has included a translated version for the court.

As previously mentioned, Mrs. Jaworska is married to her co-defendant, Tarik Jaafar. The two have known each other for over twenty years and have been married since 2002. The couple have two children together. Julian is ten (10) years old and Liam recently turned seven (7).

Mrs. Jaworska was previously employed with the American Bar Association in Washington D.C. She enjoyed her work and got along well with her co-workers. One of her former co-workers has provided a letter of support which is attached. Mrs. Jaworska left her position with the association after giving birth to the couple's second child, Liam. Mr. Jaafar requested that Mrs. Jaworska leave her position and focus on being a mother to their children. This decision put a financial strain on the family, but Mrs. Jaworska honored her husband's request and resigned from her position.

As a mother, Mr. Jaworska pays full attention to her children's needs. She is and always has been the sole care provider for them. She assists with their education, emotional needs, discipline, and medical needs. Her arrest and subsequent detention from June 20 through September 3 is the longest she had ever been away from her children. In fact, since the children were born she had never spent a single day away from them. The absence left her and her children devastated. Mrs. Jaworska will never forgive herself for what the children had to endure during her absence.

Sadly, her release coincided with her and Julian testing positive for Covid-19, and shortly after Liam also tested positive. Mrs. Jaworska immediately resumed her caretaking duties and made sure that her children were properly cared for during this time. This is despite her having no assistance and also enduring the toll that the illness took on her health. She suffered from reduced lung capacity, exhaustion, and coughing fits. She was still able to ensure the children were prepared for the school year and assisted them with their virtual schooling. Her children are her life.

Mrs. Jaworska's relationship with her husband/co-defendant is complex. She is visibly susceptible to his influence and at times overbearing pressure. In 2012, the relationship became so tense, Mr. Jaworska contacted Prince William County police department to request emergency assistance. Despite her initial call, Mrs. Jaworska attempted to prevent her husband's arrest. This is typical of someone in an abusive relationship, and it can be a vicious cycle.

The instant offense serves as Mrs. Jasworska's first criminal conviction. The time that she was detained was the first time that she has ever even seen the inside of a jail. The event was traumatic and she has vowed to never find herself on the wrong side of the law again. She understands that her actions should always reflect her dedication to being a mother first. All other commitments, including marriage, are secondary. She suffers from anxiety and nightmares that have been triggered by her illegal acts and subsequent prosecution.

Mrs. Jaworska looks forward to moving forward with her life. She has resumed care of her children. She is also seeking employment as a virtual translator. She has suffered from severe complications of carpel tunnel syndrome so she is hesitant to work in a possession that requires consistent use of the keyboard.

The conviction and detention of Mr. Jaworska and Mr. Jaafar has resulted in even more financial hardship to the family. Mrs. Jaworska has sold off furniture and other personal

belongings in order to obtain financial resources for the family. She hopes to obtain gainful employment in the near future, but understands that she will face several obstacles. She understands that she can seek out and use the U.S. Probation Office as a resource to assist with her employment search.

### C. The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation

Mrs. Jaworska is 43 years old. She has never served any period of incarceration for anything other than the matter before this court. As recommended by the Government, a sentence of time served and two (2) years of supervised release is enough to meet the aims of sentencing in this matter.

Mr. Jaafar, who steered the conspiracy, was sentenced to period of twelve months by this court. The Government can agree that Mr. Jaafar is the one who had the banking background and was very experienced in loan applications. He is also the individual who opened the various businesses that were subsequently used. He is also the person who purchased the tickets for travel to Poland, having full knowledge that he was a target of a federal investigation.

Counsel agrees with the Government's recommendation and position that a sentence of time served will avoid any unwarranted sentencing disparities.

The fact that all of the money has been recovered and full restitution will be promptly made is also a factor that should be considered. The victims will be fully restored once the Government releases the funds directly to the banks.

The parties agree that a sentence of time served and two (2) years of supervised release is sufficient to meet the aims of sentencing in this matter.

### I. CONCLUSION

For the reasons stated above, Mrs. Jaworska requests that this court sentence her to time served and two (2) years of supervised release. The parties agree that this sentence is sufficient to accomplish the objectives of sentencing as detailed in 18 U.S.C. §3553(a). However, if this court does sentence Mrs. Jaworska to an additional period of incarceration, she request that she be allowed to serve this time via "in-home incarceration" or be allowed to self-surrender after Mr. Jaafar's release. There are no other individuals that can provide care for her two children at this time.

                                                    Respectfully Submitted,
                                                    MONIKA JAWORSKA
                                                    By Counsel

                                                    By: /s/Jonathan Simms
                                                    Jonathan A. Simms, Esq
                                                    The Simms Firm, PLC
                                                    11325 Random Hills Road
                                                    Suite 360
                                                    Fairfax, Virginia 22030
                                                    (703) 383-0636
                                                    (703) 225-3333 (Fax)
                                                    jsimms@simmsfirm.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that November 30, 2020, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kim Sharter, Esq.
William Fitzpatrick, Esq.
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314

                                                    By: /s/Jonathan Simms
                                                    Jonathan A. Simms, Esq
                                                    The Simms Firm, PLC
                                                    11325 Random Hills Road
                                                    Suite 360
                                                    Fairfax, Virginia 22030
                                                    (703) 383-0636
                                                    (703) 225-3333 (Fax)
                                                    jsimms@simmsfirm.com